United States District Court
Southern District of Texas
**ENTERED**
September 30, 2022
Nathan Ochsner, Clerk

# United States District
# Southern District of Texas
# Houston Division

| | | |
|---|---|---|
| JAMES DWAYNE CROWLEY, (TDCJ–CID #02125813) | § § § | CIVIL ACTION NO 4:21–cv–00785 |
| Petitioner, | § § § | |
| vs. | § § § | JUDGE CHARLES ESKRIDGE |
| BOBBY LUMPKIN, Respondent. | § § § | |

## Memorandum on Dismissal

The motion by Respondent Bobby Lumpkin for summary judgment is granted. Dkt 12.

The petition by James Dwayne Crowley for a writ of *habeas corpus* is dismissed with prejudice. Dkt 1.

His motion for evidentiary hearing is denied. Dkt 18.

### 1. Background

Crowley was charged by indictment with aggravated robbery. The indictment further alleged two previous felony convictions for punishment-enhancement purposes. Dkt 11-24 at 144. The State also filed a notice of enhancement alleging four additional prior felony convictions. Dkt 11-10 at 99–101. A jury found Crowley guilty of aggravated robbery in August 2015 in Cause Number 15-10-11144, before the 435th Judicial District Court of Montgomery County, Texas. Dkt 11-24 at 145–148. The Ninth Court of Appeals summarized the pertinent factual background as follows:

> After midnight on October 18, 2015, Crowley entered the Flying J Truck Stop in New Caney, Texas. During the approximately five hours that

followed, Crowley entered the store multiple times and changed his attire several times. In video surveillance from the truck stop, Crowley's distinctive hand tattoos are visible, as well as his wristwatch, and boots. These remained visible and consistent despite the clothing changes.

During those early morning hours, Crowley, wearing a short-sleeved gray Dallas Cowboys t-shirt, was captured on camera stealing multiple items from the store, including a flashlight and Cobra GPS units. At one point, Crowley is observed speaking to a clerk and pointing to items on an aisle in the electronics section of the store. After interacting with the clerk, he is then observed on video watching the clerk disappear down a hall toward an office into a restricted area, while he remained in the unrestricted part of the store. Later, Crowley entered the restricted area, proceeded down the hall to the back office, grabbed an armload of merchandise, including a Cobra GPS unit, and exited through the rear door of the store.

He returned to the store after 3:00 a.m., wearing the same gray Dallas Cowboys t-shirt, but he had added a jacket and a blue Dallas Cowboys hat. Crowley stole multiple Cobra GPS units and was recorded checking the safe. At one point in the evening, the surveillance camera also captured him speaking with witness Ronald Hill.

Following the merchandise thefts, Crowley re-entered the store shortly before 5:00 a.m. wearing a different jacket and a camouflaged hat with flaps over the ears. A little before 5:00 a.m., the surveillance cameras captured Crowley taking a glove out of a package in the store and putting it on his right hand. He is then observed pointing a gun at Connie Prior and another employee in the office area. Prior can be seen opening the safe, and Crowley is seen removing two large bags of coins.

2

As Crowley was struggling with the bags of coins from the safe, the gun went off and a projectile ricocheted off the floor, hitting Prior in the arm. Unable to sustain the weight of the coins, the handle from the cloth shopping bag Crowley was using broke and it was left on the floor in the store. Crowley dropped one of the bags of coins outside the store but got away with one bag of coins.

Officers responded to the scene and collected surveillance footage from the store. Upon reviewing the footage, an officer recognized Hill, the man Crowley spoke with briefly in the store. The officers located Hill, and after speaking with him, concluded James Crowley was a suspect. The lead investigator on the case, Montgomery County Sheriff's Office ("MCSO") Detective Hahs, obtained an arrest warrant for Crowley. The MCSO determined Crowley drove a blue Dodge vehicle owned by his wife and acquired its license plate number. At the scene, they recovered the handle from the shopping bag Crowley used and the projectile fired from the gun.

On October 21, 2015, Hahs and his partner received a call from MCSO Sergeant Swilling regarding a shots-fired incident in another part of the county, advising them that the description of the shooter matched their armed robbery suspect. On the way to the shots-fired location, Hahs observed a vehicle matching Crowley's vehicle traveling the opposite direction. Hahs testified he made a U-turn and followed it until it pulled into the parking lot of a local business. The license plate number matched the one on the vehicle owned by Crowley's wife. Hahs testified that because he had an arrest warrant for Crowley and was unsure who was in the vehicle at the time, he and his partner proceeded to perform a felony takedown. The individuals exited the vehicle, but Crowley was not

with them. A blue Dallas Cowboys hat matching the one Crowley wore the night of the armed robbery was observed in plain view on the deck of the rear window.

Hahs testified the driver of the vehicle, John Colletti, said he borrowed the car from Crowley, and there was no evidence connecting the individuals in the vehicle to the crime. Colletti offered to ride with detectives and take them to the gun used during the robbery. Hahs testified that because Colletti left with them, and none of the other individuals owned the car or had been given permission to drive, they impounded the vehicle. Due to it being impounded, department policy required Hahs to conduct an inventory search of the vehicle, which he briefly did at the location of the felony takedown. During the inventory, Hahs located a GPS box consistent with the ones taken from the truck stop, as well as drug paraphernalia. Hahs confirmed he did not have a warrant to search the vehicle.

Detective Hahs testified that it appeared Colletti had information that might be useful to the investigation. Colletti took them to an RV park to the residence of Terry Goad. As soon as detectives told Goad why they were there, he directed them to a gun in the glove box of his motor home. The officers located a .380 pistol and magazine in the glove box and took the items as evidence. Goad confirmed he purchased the gun from Crowley on October 21, 2015, several days after the robbery.

Later in the investigation, Hahs obtained a search warrant to retrieve data from Crowley's cell phone. The judge signed the warrant at 3:23 p.m. on October 27, 2015. However, the return is dated August 7, 2009. At trial, Hahs testified he executed the search warrant "immediately" and acknowledged the wrong date on the return was a

4

clerical error.

The primary focus of the State's case was video surveillance footage from the store that captured the crime on film and photographs retrieved from those surveillance videos. The State's ballistics expert testified regarding the tests performed and concluded that the projectile retrieved as evidence from the store was fired from the gun Crowley sold to Goad. Moreover, DNA obtained from the shopping bag handle also linked Crowley to the crime. Evidence obtained from the blue Dodge included the blue Dallas Cowboys hat and a GPS unit from the trunk. Cell phone data from Crowley's phone showed multiple searches seeking information regarding the aggravated robbery at the Flying J and searches for criminal defense attorneys in the days after the robbery.

Following two hearings, the trial court denied Crowley's motion to suppress the evidence seized from the vehicle and the cell phone data. The trial judge also denied Crowley's requested article 38.23 jury instruction. The jury convicted Crowley of aggravated robbery.

*Crowley v State*, No. 09-17-00133-CR, 2019 WL 942873, *1–3 (Tex App Beaumont Feb 27, 2019, pet ref'd) (unpublished).

Crowley elected to have the trial court assess punishment upon conviction by the jury. Dkt 11-24 at 147. The trial court found four of the six enhancements true and sentenced him to life in prison. Id at 145–148. The Ninth Court of Appeals affirmed his conviction in February 2019. *Crowley*, 2019 WL 942873. The Texas Court of Criminal Appeals refused his petition for discretionary review on July 24, 2019. Dkt 11-9 at 1.

Crowley then filed a state application for a writ of *habeas corpus* on December 1, 2019. Dkt 11-23 at 26. The Texas Court of Criminal Appeals denied it without written order or hearing on December 9, 2020. Dkt 11-22 at 1.

5

Crowley filed this federal petition for a writ of *habeas corpus* in March 2021. Dkt 1. He contends that his conviction is void for several reasons specified below.

1) The trial court violated his Fourth Amendment rights by erroneously denying his motion to suppress;

2) The trial court violated his Fourth Amendment rights by refusing to give proper jury instructions under Texas Code of Criminal Procedure article 38.23;

3) The prosecutor knowingly presented false testimony and failed to correct it regarding who created the compilation video viewed by the jury;

4) The prosecution knowingly withheld exculpatory evidence such as a quality incident report from Texas Department of Public Safety indicating that a DNA sample had been contaminated by Detective Paul Hahs;

5) Trial counsel rendered ineffective assistance by failing to:

   a) raise objections to unauthenticated video discs;

   b) research, prepare and investigate erroneous DNA match testimony; and

   c) effectively cross-examine identification testimony resulting in the appearance of stipulation;

6) Trial counsel's cumulative errors denied him effective assistance of counsel;

7) Crowley was convicted with no competent or credible evidence to prove every essential element of the charged offense; and

8) The trial court deprived Crowley of due process and effective assistance of counsel by interfering with counsel's ability to *voir dire* prospective jurors who admitted a pro-police

6

bias and by failing to rule on his objections. Dkt 1 at 7–9; Dkt 3 at 1–32.

### 2. Legal standard

Respondent moves for summary judgment, arguing that claims two, seven, and eight are procedurally barred and that the remaining claims by Crowley lack merit and must be dismissed. Dkt 12 at 11, 27–31. He attached the trial transcript and other state-court records to that motion. Dkt 11.

### a. AEDPA

Crowley proceeds here *pro se*. A *pro se* petition is construed liberally and isn't held to the same stringent and rigorous standards as pleadings filed by lawyers. See *Martin v Maxey,* 98 F3d 844, 847 n 4 (5th Cir 1996); *Bledsue v Johnson,* 188 F3d 250, 255 (5th Cir 1999).

The Antiterrorism and Effective Death Penalty Act, 28 USC § 2241 *et seq*, governs this federal petition for *habeas corpus*. See *Woodford v Garceau*, 538 US 202, 205–08 (2003); *Lindh v Murphy*, 521 US 320, 335–36 (1997). This has consequences for the standard of review as to disputed questions of both law and fact.

*As to disputed questions of law,* AEDPA bars federal *habeas corpus* relief based upon claims that were adjudicated on the merits by state courts unless the decision of the state court "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 USC § 2254(d); see also *Early v Packer*, 537 US 3, 7–8 (2002); *Cobb v Thaler*, 682 F3d 364, 372–73 (5th Cir 2012). The Fifth Circuit holds that a state-court decision is *contrary to clearly established federal law* "if it reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court based on materially indistinguishable facts." *Gray v Epps*, 616 F3d

436, 439 (5th Cir 2010), citing *Williams v Taylor*, 529 US 362, 404–08 (2002). And the Fifth Circuit holds that *an unreasonable application of federal law* means that the decision is "unreasonable, not merely wrong; even clear error will not suffice." *Escamilla v Stephens*, 602 F Appx 939, 941 (5th Cir 2015, *per curiam*), quoting *White v Woodall*, 572 US 415, 419 (2014). This is a high bar. To satisfy it, a petitioner must "show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Woods v Donald*, 575 US 312, 316 (2015), quoting *Harrington v Richter*, 562 US 86, 103 (2011).

*As to disputed questions of fact,* AEDPA precludes federal relief unless the adjudication by the state court of the merits was based on an "unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 USC § 2254(d)(2); see also *Martinez v Caldwell*, 644 F3d 238, 241–42 (5th Cir 2011). A state court's factual determinations are "presumed to be correct" unless the petitioner rebuts those findings with "clear and convincing evidence." 28 USC § 2254(e)(1). This presumption of correctness extends not only to express factual findings, but also to implicit or "unarticulated findings which are necessary to the state court's conclusion of mixed law and fact." *Murphy v Davis*, 901 F3d 578, 597 (5th Cir 2018), quoting *Valdez v Cockrell*, 274 F3d 941, 948 n 11 (5th Cir 2001).

A federal court reviewing a petition for writ of *habeas corpus* may only consider the factual record that was before the state court when determining the reasonableness of that court's findings and conclusions. *Cullen v Pinholster*, 563 US 170, 180–81 (2011). And the Supreme Court instructs that it "may not characterize these state-court factual determinations as unreasonable 'merely because [it] would have reached a different conclusion in the first instance.'" *Brumfield v Cain*, 576 US 305, 313–14 (2015),

quoting *Wood v Allen*, 558 US 290, 301 (2010). To the contrary, § 2254(d)(2) requires the federal court to "accord the state trial court substantial deference." *Brumfield*, 576 US at 314.

A petitioner seeking a writ of *habeas corpus* must also demonstrate injury of a certain character. To warrant relief based on state-court error, a petitioner must show the alleged error had "substantial and injurious effect." *Brecht v Abrahamson*, 507 US 619 (1993); for example, see *Hughes v Quarterman*, 530 F3d 336, 345 (5th Cir 2008). This high bar isn't met where evidence of the defendant's guilt is overwhelming. *Burgess v Dretke*, 350 F3d 461, 472 (5th Cir 2003). There must be more than a mere reasonable possibility that it contributed to the verdict. *Brecht*, 507 US at 638. But where a court is confident the error caused grave harm—or even if the record is evenly balanced in this regard—the petitioner is entitled to relief. See *Fry v Pliler*, 551 US 112 n 3 (2007), citing *O'Neal v McAninch*, 513 US 432, 435 (1995); see also *Robertson v Cain*, 324 F3d 297, 305 (5th Cir 2003).

Finally, several other technical or procedural limitations can foreclose federal *habeas corpus* relief. For instance, a federal claim is foreclosed if it is barred because of a failure to comply with state procedural rules. See *Coleman v Thompson*, 501 US 722 (1991). It is likewise foreclosed if it seeks retroactive application of a new rule of law to a conviction that was final before the rule was announced. See *Teague v Lane*, 489 US 288 (1989).

The scope of federal review on *habeas corpus* is limited by the "intertwined doctrines" of both exhaustion and procedural default. *Bledsue*, 188 F3d at 254. These are intertwined because a failure to exhaust may also result in procedural default.

*As to exhaustion,* the Anti-Terrorism and Effective Death Penalty Act of 1996 requires that a person in custody pursuant to the judgment of a state court generally must exhaust available state remedies prior to filing a petition for a writ of *habeas corpus* in federal court. To meet this

9

requirement "the petitioner must afford the state court a 'fair opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim.'" *Bagwell v Dretke*, 372 F3d 748, 755 (5th Cir 2004), quoting *Anderson v Harless*, 459 US 4, 6 (1982). This means that a petitioner must present his claims in a procedurally proper manner to the highest court of criminal jurisdiction in the state, which in Texas is the Texas Court of Criminal Appeals. See *O'Sullivan v Boerckel*, 526 US 838, 844–45 (1999); *Richardson v Procunier*, 762 F2d 429, 432 (5th Cir 1985).

A Texas prisoner may exhaust state court remedies by filing a direct appeal from a judgment of conviction, followed, if necessary, by a petition for discretionary review in the Texas Court of Criminal Appeals. See TRAP 68.1; TCCP art 11.07. A prisoner may also file an application for a writ of *habeas corpus* under Article 11.07 of the Texas Code of Criminal Procedure in the convicting court, which is sent to the Texas Court of Criminal Appeals once the trial court determines whether findings are necessary. See TCCP art 11.07, § 3(c). Texas prisoners must typically exhaust state remedies "by pursuing their claims through one complete cycle of either state direct appeal or post-conviction collateral" review under Article 11.07. *Busby v Dretke*, 359 F3d 708, 723 (5th Cir 2004).

*As to procedural default,* if a petitioner fails to exhaust state remedies (or to satisfy an exception to exhaustion) and the state court would find the claims procedurally barred, then "there is a procedural default for purposes of federal habeas." *Coleman*, 501 US at 735 n 1; *Williams v Thaler*, 602 F3d 291, 305 (5th Cir 2010), quoting *Bagwell*, 372 F3d at 755. Thus, in line with the text of § 2254(b)(2), a district court reviewing the claims of a *habeas* petitioner who fails to satisfy the exhaustion requirement may dismiss the action on either procedural-default grounds or on the merits. *Trevino v Davis*, 829 F3d 328, 341 (5th Cir 2016). This means that procedural default functions as a "corollary to the habeas statute's exhaustion requirement," similarly constricting the scope of federal review on *habeas*

10

corpus. *Dretke v Haley*, 541 US 386, 392–93 (2004); see also *Coleman*, 501 US at 729.

Federal review of a claim on *habeas corpus* is also procedurally barred if the last state court to consider the claim expressly and unambiguously bases its denial of relief on a state procedural default. *Davila v Davis*, 137 S Ct 2058, 2064 (2017); *Coleman*, 501 US at 729. But to qualify, that state-law procedural ground must provide an "independent and adequate ground for dismissal." *Rocha v Thaler*, 626 F3d 815, 820 (5th Cir 2010), quoting *Nobles v Johnson*, 127 F3d 409, 420 (5th Cir 1997). As used, *independent* means "independent of the merits of the federal claim." Id at 821, quoting *Finley v Johnson*, 243 F3d 215, 218 (5th Cir 2001). And *adequate* means that the rule is "strictly or regularly applied evenhandedly to the vast majority of similar claims." Ibid, quoting *Amos v Scott*, 61 F3d 333, 339 (5th Cir 1995). See *Ex parte Grigsby*, 137 SW3d 673, 674 (Tex Crim App 2004) ("[W]here an applicant challenges the sufficiency of the evidence on an application for a writ of habeas corpus, and [the TCCA] subsequently dispose[s] of the application by entering a denial without written order, the applicant's sufficiency claim was denied because the claim is not cognizable."); see also *Reed v Thaler*, 428 F Appx 453, 454 (5th Cir 2011, *per curiam*); *West v Johnson*, 92 F3d 1385, 1398 n 18 (5th Cir 1996). Moreover, this state procedural default is an independent and adequate state law ground to invoke the procedural bar insofar as it is not based on federal law, and Texas courts have routinely held that a sufficiency claim is not cognizable on state *habeas* review. See *Ex parte Knight*, 401 SW3d 60, 64 (Tex Crim App 2013).

A petitioner may obtain federal review of a defaulted claim by showing cause for the default and actual prejudice as a result of the alleged violation of federal law, or by demonstrating that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 US at 750; see also *Trevino v Thaler*, 569 US 413, 421 (2013). As used, *cause* must be something external to the

11

petitioner that can't be fairly attributed to him. *McCowin v Scott*, 67 F3d 100, 102 (5th Cir 1995). And *actual prejudice* requires a petitioner to demonstrate that "the error had substantial and injurious effect or influence in determining the" outcome of litigation. *Barrientes v Johnson*, 221 F3d 741, 756 (5th Cir 2000), quoting *Brecht*, 507 US at 637.

A petitioner may also obtain federal review of a defaulted claim by demonstrating that failure to consider the claim will result in a *fundamental miscarriage of justice*. This exception applies where the petitioner is actually innocent of the crime of which he was convicted. *Rocha*, 619 F3d at 402; *Sawyer v Whitley*, 505 US 333, 339–40 (1992). A showing of actual innocence requires a petitioner to produce "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence"—sufficient to persuade the district court that "no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup v Delo*, 513 US 298, 324, 329 (1995); see also *McQuiggin v Perkins*, 569 US 383, 386 (2013); *House v Bell*, 547 US 518, 536–38 (2006). To be clear, a claim of actual innocence is "a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Herrera v Collins*, 506 US 390, 404 (1993). It isn't a stand-alone claim. Id at 400.

### b. AEDPA and Rule 56

The Fifth Circuit holds, "As a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases." *Clark v Johnson*, 202 F3d 760, 764 (5th Cir 2000). But where Rule 56 and the rules governing *habeas corpus* petitions conflict, the latter governs. *Austin v Davis*, 647 F Appx 477, 483 (5th Cir 2016, *per curiam*); see also *Torres v Thaler*, 395 F Appx 101, 106 n 17 (5th Cir 2010, *per curiam*) (citations omitted). As such, the presumption of correctness mandated by § 2254(e)(1)

12

"overrides the ordinary summary judgment rule that all disputed facts must be construed in the light most favorable to the nonmoving party." *Austin*, 647 F Appx at 483 (citation omitted); cf *Anderson v Liberty Lobby*, 477 US 242, 255 (1986) (stating typical summary-judgment standard in civil cases).

An articulated opinion from a state court has natural pertinence to resolution of disputed questions of both law and fact on *habeas corpus* review. But some state-court decisions reach a conclusion without such articulation. What then? The Fifth Circuit holds, "When faced with a silent or ambiguous state habeas decision, the federal court should 'look through' to the last clear state decision on the matter." *Jackson v Johnson*, 194 F3d 641, 651 (5th Cir 1999), quoting *Lott v Hargett*, 80 F3d 161, 164 (5th Cir 1996). This is because a presumption exists that later, unexplained orders rejecting a federal claim are decided on the same basis as earlier, reasoned orders resting upon the same ground. *Ylst v Nunnemaker*, 501 US 797, 803 (1991). This also accords with decisional practice of the Texas criminal courts. The Texas Court of Criminal Appeals holds that a statement of *denial* of a state application for a writ of *habeas corpus* without written order signifies an adjudication that the court below reached the correct ruling on the merits (as compared to a statement of *dismissal*, which means only that the claim was declined on grounds other than the merits). *Ex parte Torres*, 943 SW2d 469, 472 (Tex Crim App 1997, *en banc*); see also *Singleton v Johnson*, 178 F3d 381, 384 (5th Cir 1999).

Even so, the state court's decision will at times be unaccompanied by explanation, with no level of review having issued a reasoned opinion. The Supreme Court holds in such situations that "the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington*, 562 US at 98; see *Salts v Epps*, 676 F3d 468, 480 n 46 (5th Cir 2012) (applying *Harrington*).

13

### 3.   Procedurally barred claims

#### a.   Claim 2: Failure to give jury instruction

In his second claim, Crowley challenges the trial court's failure to issue an instruction under Texas Code of Criminal Procedure 38.23. This would have allowed the jury to disregard evidence if it believed it was obtained illegally.

Crowley raised this claim based on jury instruction on direct appeal. Dkt 11-4 at 4. He argues that he properly exhausted this claim because he raised it on direct review and on state *habeas* review. Dkt 18 at 11. Though he filed a direct appeal, he didn't file a petition for discretionary review to the Texas Court of Criminal Appeals. Because Crowley didn't exhaust his second claim, it is procedurally barred from review by this Court.

Crowley can overcome this procedural bar to federal review by demonstrating "(1) cause for the procedural default and actual prejudice as a result of the alleged violation of federal law or (2) that failure to consider his claims will result in a fundamental miscarriage of justice." *Smith v Johnson*, 216 F3d 521, 524 (5th Cir 2000) (internal quotation marks and citation omitted). Crowley doesn't make this showing. He can't show *cause* because state court records reflect that he could and should have raised this claim as part of his direct appeal in a petition for discretionary review.

Because no showing of *cause* is made, the inquiry into *actual prejudice* needn't be considered. See *Saahir v Collins*, 956 F2d 115, 118 (5th Cir 1992). He fails to address why a trial-court error relating to the jury instruction claim wasn't raised on direct appeal in a petition for discretionary review.

Crowley's second claim is procedurally barred and will be dismissed.

14

### b.   Claim 7: No evidence

Crowley asserts that he was convicted with no competent or credible evidence to prove every essential element of the charged offense. Dkt 1 at 7(a); Dkt 3 at 26–29. He argues that he was never identified in or out of court by anyone who witnessed the crime; the purported identifications from the unauthenticated video were based on a similarity of clothing; he was excluded from the firearm used in the crime by genuine forensic evidence; his fingerprints were excluded from the crime scene; the actual witnesses who spoke with the robber did not identify him as the criminal; and there is no video surveillance footage that shows him entering or leaving the scene.

Texas law permits a defendant to raise *a no-evidence* claim for the first time on collateral review only when the conviction is totally devoid of any evidentiary support. *Ex parte Barfield*, 697 SW2d 420, 421 (Tex Crim App 1985), superseded by statute on other grounds*, Ex parte Sewell*, 742 SW2d 393, 395 n 2 (Tex Crim App 1987, *en banc*). An *insufficient-evidence* claim may be raised only on direct appeal—not on collateral review. See *Ex parte Williams*, 703 SW2d 674, 678–79 (Tex Crim App 1986).

Here, Crowley raised only a no-evidence claim on state *habeas* review. And the record is not totally devoid of evidentiary support for the finding that Crowley committed the offense of aggravated robbery. Video, ballistic, and DNA evidence, as well as evidence gathered from Crowley's cell-phone search history, all support the jury's verdict.

To the extent that Crowley's claim should be construed as a challenge to the sufficiency of the evidence, the claim must be denied as procedurally barred. See *Williams*, 703 SW2d at 679–80 (noting that when record is "not totally devoid of evidentiary support," collateral attack is merely insufficiency of evidence claim masquerading as no-evidence claim); *Vaughn v Stephens*, No 4:14-cv-218-Y, 2015 WL 3504941, *2 (ND Tex June 3, 2015). Crowley has neither demonstrated cause and actual prejudice nor asserted the fundamental-miscarriage-of-justice exception.

15

### c.   Claim 8: Trial court error

Crowley asserts that trial court interfered with the initial *voir dire* questioning by his trial counsel, resulting in biased jurors serving on his jury. Dkt 1 at 7(a); Dkt 3 at 29–31. Crowley didn't raise this issue on direct appeal, though he did present it in his state *habeas* application. Dkt 11-23 at 24–25. The state *habeas* court construed this claim as one of trial-court error. Crowley now complains that Respondent recharacterized his ineffective-assistance claim as a trial-court-error claim. Dkt 18 at 27. The state court found that Crowley's challenges to the court's trial rulings were record-based and not cognizable on *habeas* review. Dkt 11-24 at 128 (Finding No. 15), 30 (Conclusion No. 4). The Texas Court of Criminal Appeals denied his petition without written order based on the trial court's findings and its own independent review of the record. Dkt 11-22 at 1.

Claims that could have been, but were not, raised on direct appeal may not be raised in state *habeas* proceedings in Texas. *Ex parte Gardner,* 959 SW2d 189, 191 (Tex Crim App 1996). The Fifth Circuit holds that this rule is "an adequate state ground capable of barring federal habeas review." *Aguilar v Dretke*, 428 F3d 526, 535 (5th Cir 2005), quoting *Busby*, 359 F3d at 719.

Crowley failed to raise his *voir dire* claim on direct appeal, and the state court explicitly denied review on procedural-default grounds. Crowley hasn't shown cause or actual prejudice attributable to the default. Nor has he shown that he is actually innocent of aggravated robbery.

Crowley's eighth claim is procedurally barred and will be dismissed.

### 4.   Claim 1: Search and seizure

Crowley asserts that the trial court erred when it denied his motion to suppress the seized cellular telephone data and the search and seizure of a motor vehicle. Dkt 1 at 6; Dkt 3 at 5–10. The trial court issued its ruling after holding a pre-trial conference. The Ninth Court of Appeals upheld the trial court's decision to deny the motion to

suppress. *Crowley,* 2019 WL 942873 at *3–5. Crowley reargued a part of his Fourth Amendment claim in his PDR that the Texas Court of Criminal Appeals refused. *Crowley v State,* PDR No 0278-19 (Tex Crim App June 11, 2019).

Crowley now argues that the state court's decision upholding the searches was unreasonable. But Fourth Amendment claims are categorically barred from federal *habeas* review when the state has provided "an opportunity for full and fair litigation" of the claim. *Stone v Powell*, 428 US 465, 494 (1976). Crowley had that opportunity to litigate his Fourth Amendment claim pre-trial and on direct review. As such, he can't raise such claim on federal *habeas* review.

Crowley's first claim is without merit and will be dismissed.

### 5.    Prosecutorial misconduct

Claims of prosecutorial misconduct in a state court prosecution are governed by the clearly established standard set forth in *Darden v Wainwright*, 477 US 168 (1986). See also *Parker v Matthews*, 567 US 37, 45 (2012, *per curiam*). A constitutional violation occurs only where "the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden*, 477 US at 181, quoting *Donnelly v DeChristoforo*, 416 US 637 (1974). Federal *habeas* relief is rarely granted on the basis of prosecutorial misconduct because "a prosecutor's improper argument will, in itself, exceed constitutional limitations in only the most 'egregious cases.'" *Menzies v Procunier*, 743 F2d 281, 288–89 (5th Cir 1984), quoting *Houston v Estelle*, 569 F2d 372, 382 (5th Cir 1978). A prosecutor's comments will only render a trial unfair where the improper argument was "a crucial, critical, highly significant factor in the jury's determination of guilt." *Whittington v Estelle*, 704 F2d 1418, 1422 (5th Cir 1983).

17

a.   Claim 3: Perjured testimony

Crowley's first claim is that the State presented and failed to correct perjured testimony. He refers to the compilation video of the relevant surveillance footage viewed by the jury. Dkt 1 at 8; Dkt 3 at 13–16. The prosecutor knowingly elicited further false testimony from Detective Hahs that the compilation video was a true and correct representation of events at the Flying J truck stop on the morning of the offense. Crowley asserts that this false and confusing testimony was presented to confuse the court and the jury as to the source of the video and the lack of chain of custody.

The prosecution may not knowingly use perjured testimony or allow perjured testimony to go uncorrected. *Napue v Illinois*, 360 US 264, 269 (1959); *Giglio v United States*, 405 US 150, 154 (1972). However, to establish a due process violation, a petitioner must demonstrate that (i) the testimony in question was actually false, (ii) the prosecutor was aware of the perjury, and (iii) the testimony was material. *Faulder v Johnson*, 81 F3d 515, 519 (5th Cir 1996).

Crowley fails to offer any factual or legal support for his claim of perjured testimony, and his bare assertions don't establish that material, false or misleading testimony was admitted at trial. See *Ross v Estelle*, 694 F2d 1008, 1011 (5th Cir 1983) (cited cases omitted) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition . . ., unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value"). Crowley's apparent focus is on Detective Hahs's search of the blue Dodge and the preparation of the surveillance video.

However, Crowley's disagreement with Detective Hahs's testimony falls well short of any proof that he testified falsely at trial. "Conflicting or inconsistent testimony is insufficient to establish perjury." *Kutzner v Johnson*, 242 F3d 605, 609 (5th Cir 2001), citing *Koch v*

18

*Puckett*, 907 F2d 524, 531 (5th Cir 1990). Rather, "contradictory trial testimony . . . merely establishes a credibility question for the jury." *Koch*, 907 F2d at 531. And absent a showing that the testimony at issue was actually false and that the prosecutor knew it was false, Crowley cannot establish a constitutional violation. See *Pierre v Vannoy*, 891 F3d 224, 229 (5th Cir 2018) (finding no constitutional error if prosecutor doesn't knowingly present false testimony at trial), citing *Kinsel v Cain*, 647 F3d 265, 272 (5th Cir 2011).

Crowley claims that no state court made any findings of fact, and there is no presumption of correctness. Dkt 18 at 26. Not so. The state *habeas* court found that (i) the State did not elicit false testimony on the surveillance footage, (ii) the allegedly false testimony on the surveillance footage was immaterial to Crowley's guilt, and (iii) the State properly authenticated the surveillance footage. Dkt 11-24 at 128.

Findings by the state *habeas* court are entitled to substantial deference on federal *habeas* review and are presumed correct under § 2254(e)(1) absent clear and convincing evidence to the contrary. See *Coleman v Quarterman*, 456 F3d 537, 541 (5th Cir 2006), citing *Guidry v Dretke*, 397 F3d 306, 326 (5th Cir 2005); *Valdez*, 274 F3d at 947. This presumption is especially strong where the trial judge and state *habeas* judge are the same, as they are here. *Miller-El v Johnson,* 261 F3d 445, 449, 454 (5th Cir 2001), citing *Clark,* 202 F3d at 764, 766.

Crowley asserts that witness David Peak, a Flying J employee, testified that he handed the surveillance footage over to the police at the scene on the morning of the offense, but that a list of the evidence submitted in the Montgomery County Sheriff's Office Property Inventory and Laboratory Report indicates that it was sent to the police via FedEx. Dkt 3 at 14. That same list also indicates that nine discs of surveillance footage were received from the Flying J manager while on the scene. Dkt 11-23 at 36. Crowley also cites to the examination of Detective Hahs to raise

19

questions regarding who created the compilation video. Dkt 3 at 14. Crowley maintains that this was all done to confuse the court and jury about the source of the video and mask its chain of custody and authenticity. But Crowley fails to allege how this was material to the case and provides no support for his challenge to the authenticity of the video. Mere conclusory statements don't raise a constitutional issue in a *habeas* case. *Ross,* 694 F2d at 1011.

Crowley's third claim is without merit and will be dismissed. He hasn't shown that the prosecutor engaged in misconduct or that the state *habeas* court's rejection of this claim was unreasonable or contrary to federal law.

> b.   Claim 4: Suppression of evidence

Crowley's fourth claim is that the State withheld exculpatory evidence in the form of a quality incident report from the Texas Department of Public Safety indicating that the DNA sample taken from a holster was contaminated by Detective Hahs. Dkt 1 at 8; Dkt 3 at 16–19. Crowley asserts that the withholding of the report interfered with his ability to challenge the chain of custody on the biological sample evidence, the unreliability of the evidence handling, the handlers, the DNA samples, and the integrity of the evidence itself.

The state *habeas* court found that (i) "[t]he State did not suppress a DPS quality incident report," and (ii) the information in the report was immaterial to Crowley's guilt because Crowley "was already aware that a quality event rendered inconclusive the DNA test results from samples taken from a holster used in the robbery." Dkt 11-24 at 128. It concluded on this basis that Crowley's due process rights were not violated by suppression of favorable evidence. Dkt 11-24 at 129.

A review of the record reveals that the DNA quality incident report was provided to defense counsel. See Dkt 11-10 at 39 (State's Standard Discovery Order Response indicating Texas DPS DNA Lab Report issued on August 19, 2016, was currently in State's file); Dkt 11-16 at 35

20

(Texas DPS Laboratory Report issued on August 19, 2016, indicating that DNA profile taken from swab of handmade holster was inconclusive due to quality event). Further review reveals that counsel expressed no surprise at lab analyst Shauna Schoonover's testimony regarding the quality event and raised no objections to it. See generally Dkt 11-13 at 185–88.

Suppression by the prosecution of evidence that is material to the guilt or punishment of the accused does indeed violate due process. *Banks v Dretke*, 540 US 668, 691 (2004), citing *Brady v Maryland*, 373 US 83, 87 (1963). But the record indicates that defense counsel was provided the quality incident report here. Thus, no *Brady* violation occurred.

Crowley's fourth claim is without merit and will be dismissed.

### 6. Ineffective assistance of counsel

Crowley asserts in his fifth claim that his trial counsel was ineffective in a number of ways. As detailed below, he asserts that his counsel failed to:

> (a) raise proper objections to unauthenticated video discs;
>
> (b) properly research, prepare, and investigate erroneous DNA match testimony; and
>
> (c) cross-examine identification testimony resulting in the appearance of stipulation.

Crowley must demonstrate both *deficient performance* and ensuing *prejudice* to establish ineffective assistance by his trial counsel. See *Strickland v Washington*, 466 US 668 (1984); see also *Charles v Stephens*, 736 F3d 380, 388 (5th Cir 2013).

To establish *deficiency*, the petitioner must show that the performance by trial counsel fell below an objective standard of reasonableness based on "prevailing norms of practice." *Loden v McCarty*, 778 F3d 484, 494 (5th Cir 2016); see also *Kitchens v Johnson*, 190 F3d 698, 701 (5th Cir 1999). In that regard, courts should be "highly

21

deferential" to counsel. *Strickland*, 466 US at 689. This means that "counsel is strongly presumed to have rendered adequate assistance and to have made all significant decisions in the exercise of reasonable professional judgment." Id at 690. This is particularly true as to "strategic choices made after thorough investigation of law and facts relevant to plausible options," which are "virtually unchallengeable." Id at 690–91; see also *United States v Jones*, 287 F3d 325, 331 (5th Cir), cert denied, 537 US 1018 (2002). "*Strickland* does not require deference to those decisions of counsel that, viewed in light of the facts known at the time of the purported decision, do not serve any conceivable strategic purpose." *Moore v Johnson*, 194 F3d 586, 615 (5th Cir 1999). But beyond this, the Fifth Circuit has described the deficient-performance standard as requiring counsel to have "blundered through trial, attempted to put on an unsupported defense, abandoned a trial tactic, failed to pursue a reasonable alternative course, or surrendered his client." *Jones*, 287 F3d at 331.

To establish *prejudice*, the petitioner must show a reasonable probability that—absent the deficient performance—the outcome of the proceedings would have been different. *Reed v Stephens*, 739 F3d 753, 773 (5th Cir 2014), quoting *Strickland*, 466 US at 687. In this context, a *reasonable probability* is one that is sufficient to undermine confidence in the outcome of the proceedings. *Strickland*, 466 US at 694.

### a.  Claim 5a: Failure to object

Crowley argues that the State's entire case rested on the unauthenticated surveillance video. Dkt 3 at 20. Crowley challenges the admission of the surveillance videos from the Flying J truck stop on grounds that the videos were not sufficiently authenticated. The state *habeas* court found that the State had properly authenticated the Flying J surveillance footage. Dkt 11-24 at 128 (Finding No. 11).

"To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must

22

produce evidence sufficient to support a finding that the item is what the proponent claims it is." Tex R Evid 901(a). Video recordings sought to be used in evidence, such as the recordings in this case, are treated as photographs and are properly authenticated when it can be proved that the images reflect reality and are relevant. *Cain v State*, 501 SW3d 172, 174 (Tex App—Texarkana 2016, no pet). "The preliminary question for the trial court to decide is simply whether the proponent of the evidence has supplied facts that are sufficient to support a reasonable jury determination that the evidence he has proffered is authentic." *Tienda v State*, 358 SW3d 633, 638 (Tex Crim App 2012). "If the trial court's ruling that a jury could reasonably find proffered evidence authentic is at least within the 'zone of reasonable disagreement,' a reviewing court should not interfere." Ibid.

David Peak, the general manager for the Flying J, testified as a witness with personal knowledge regarding the content of the surveillance videos. He testified that the surveillance system consisted of approximately twenty-five cameras. He explained that the digital video recorder is triggered by movement in the building. He testified that the surveillance system was functioning on the day of the offense and that he provided the footage to law enforcement that day. Dkt 11-12 at 200–04. He confirmed that State's Exhibits 9 and 10 appeared to be the copies he provided. Id at 202. Detective Hahs then confirmed that State's Exhibit 11 was a compilation of the same surveillance footage with different views. Id at 205–06.

Based on the testimony presented to the trial court, it appears that the surveillance footage was properly authenticated. And Crowley has failed to show that his counsel's performance was deficient for not challenging the surveillance video further. "Failure to raise meritless objections is not ineffective lawyering; it is the very opposite." *Clark v Collins*, 19 F3d 959, 966 (5th Cir 1994). Crowley has also not proved that his counsel's actions prejudiced his trial or that but for counsel's errors, the

result of the proceeding would be different. See *Strickland*, 466 US at 693–94.

Crowley's claim 5a is without merit and will be dismissed.

### b.   Claim 5b: Failure to investigate

Crowley next asserts that his trial counsel was ineffective for failing to adequately investigate and challenge as erroneous DNA match testimony. Dkt 1 at 9; Dkt 3 at 24–26. Specifically, Crowley asserts that trial counsel completely failed to arm himself with the necessary law and facts to defend Crowley at trial, leaving the jury to believe the "magic DNA" evidence. Dkt 3 at 24. Crowley's argument isn't supported by the record.

In his affidavit, trial counsel outlined the extensive preparations he undertook to generally prepare for Crowley's trial, including reviewing DNA evidence. Dkt 11-24 at 82. Trial counsel also detailed his preparations specifically for DNA cross-examination. Id at 83. Trial counsel's cross-examination of Shauna Schoonover, forensic scientist with the TDPS Crime Lab, supports the explanation provided in counsel's affidavit. Trial counsel cross-examined Schoonover about the DNA quality event and how it was reported, Dkt 11-13 at 191–94, the potential fallibility of the software based on human error, id at 195–96, DNA transfer, id at 200–03, shedding, id at 203, interpreting the statistical results, id at 204–05, allelic drop-off, id at 205–06, and presence of stutter, id at 208–09.

The state *habeas* court found that trial counsel's challenge to the DNA test results wasn't deficient. Dkt 11-24 at 128 (Finding No. 13). Deferring to the state court's factual findings, the state court's application of *Strickland* isn't objectively unreasonable under the doubly deferential standard. "Informed strategic decisions by counsel are given a heavy measure of deference and should not be second guessed." *Jones,* 287 F3d at 331. Furthermore, Crowley failed to demonstrate what a more thorough investigation would have revealed and how it would have

altered the outcome of his trial. *Gregory v Thaler,* 601 F3d 347, 352 (5th Cir 2016) (stating that petitioner "who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial").

Crowley's claim 5b is without merit and will be dismissed.

### c.   Claim 5c: Failure to effectively cross-examine witnesses

Crowley next complains that counsel failed to cross-examine identification testimony. Dkt 1 at 9; Dkt 3 at 22–24. He asserts that because trial counsel failed to challenge the in-court identifications, it left the jury with the impression that the defense was essentially stipulating to them. Dkt 3 at 25. The state *habeas* court found that trial counsel was not deficient in this respect. Dkt 11-24 at 128.

Tactical and strategic choices made by counsel—including whether to cross-examine witnesses and to what extent—involve the exercise of professional judgment and are virtually unchallengeable on *habeas* review. See *Ransom v Johnson,* 126 F3d 716, 721 (5th Cir 1997); *Kitchens v Johnson,* 190 F3d 698, 704 (5th Cir 1999).

In his affidavit, trial counsel explained that he was able to effectively challenge during cross-examination the witnesses' ability to identify Crowley:

> I was able to do that effectively for the most part since most of the witnesses who testified did not see Mr. Crowley's face or point him out in the courtroom. Mr. Crowley's identification was made mostly through the DNA evidence of the strap that was left behind at the scene that the assailant dropped in dashing away from the robbery. That DNA was tested and it was learned that Mr. Crowley was a contributor based on DNA obtained from

25

Mr. Crowley earlier. A video was produced that showed 2 men in the Flying J earlier that day. A police officer recognized one of the men as Mr. Richard Hill. Mr. Hill was contacted by the police and he informed them that the other man in the video that was with him was Mr. James Dwayne Crowley. Mr. Crowley stated to me that he had been caring for Mr. Hill's mom. Mr. Crowley was wearing the identical clothing that the assailant was wearing in the robbery of the Flying J later that day except for a baseball cap and sun-glasses. His shoes, jeans and t-shirt were identical. I did question Mr. Hill but he did not change his testimony.

Dkt 11-24 at 83.

A review of the record also reveals that trial counsel questioned Ms. Prior, the shift leader for Flying J, regarding her ability to provide an identification. Dkt 11-12 at 130.

Q. Okay. Now, you said that you described him as having an – I guess a camouflage hat; is that correct?

A. Yes.

Q. Okay. Did he have sunglasses on or anything?

A. I don't remember seeing sunglasses.

Q. Okay. Did he have a jacket on?

A. I don't remember.

Q. Okay. Did he have a sweater?

A. I don't remember.

. . .

Q. Now, you indicated in your statement that you did not get a good look at the person; is that correct?

26

A. Yes.

Dkt 11-12 at 130–132.

Here, again, Crowley has failed to show that the performance by his trial counsel was deficient or that he was actually prejudiced as a result.

### d. The claim based on the cumulative error doctrine (Claim 6)

Crowley maintains that the cumulative effect of the various errors resulting from the ineffective assistance of counsel merits federal *habeas* relief. Dkt 3 at 25. The cumulative error doctrine provides that "an aggregation of non-reversible errors (*i.e.*, plain errors failing to necessitate reversal and harmless errors) can yield a denial of the constitutional right to a fair trial, which calls for reversal." *United States v Munoz*, 150 F3d 401, 418 (5th Cir 1998), cert denied, 525 US 1112 (1999). However, Crowley has failed to establish any error in his trial.

Therefore, relief is not available under the cumulative error doctrine. See *United States v Williams*, 264 F3d 561, 572 (5th Cir 2001) (no cumulative error where defendant failed to identify single error in jury selection); *Miller v Johnson*, 200 F3d 274, 286 (5th Cir 2000) (petitioner who failed to demonstrate any error by trial counsel could not establish cumulative error).

### 7. Motion for evidentiary hearing

Crowley seeks an evidentiary hearing as to his challenge to his conviction and sentence. See Dkt 19.

Rule 8 of the Rules Governing Section 2254 Cases states, "If it appears that an evidentiary hearing is not required, the judge shall make such disposition of the petition as justice shall require." The reviewing court thus has discretion to reject the need for an evidentiary hearing. See *Conner v Quarterman*, 477 F3d 287, 293 (5th Cir 2007), citing *Roberts v Dretke*, 381 F3d 491, 497 (5th Cir 2004). Indeed, AEDPA reflects a congressional intent "to avoid unneeded evidentiary hearings" in federal proceedings on *habeas corpus* proceedings. *Williams v Taylor*, 529 US 420,

436 (2000). Section 2254(e)(2) of Title 28 thus provides:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
>
> (A) the claim relies on—
>
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

A federal *habeas corpus* petitioner can have an evidentiary hearing if a genuine factual dispute exists and the state hasn't afforded a full and fair hearing. *Clark*, 202 F3d at 766, quoting *Perillo v Johnson*, 79 F3d 441, 444 (5th Cir 1996). But a petitioner isn't entitled to a federal evidentiary hearing "if his claims are merely 'conclusory allegations unsupported by specifics' or 'contentions that in the face of the record are wholly incredible.'" *Young v Herring*, 938 F2d 543, 560 (5th Cir 1991), quoting *Blackledge v Allison*, 431 US 63, 74 (1977); see also *Washington v Davis*, 715 F Appx 380, 385 (5th Cir 2017, *per curiam*).

Crowley presents nothing but conclusory assertions that he is illegally confined due to ineffective assistance of counsel, prosecutorial misconduct, and trial court error. Dkt 18. An evidentiary hearing isn't necessary where nothing establishes a pertinent factual dispute that

28

requires development in order to assess the claims. *Robison v Johnson*, 151 F3d 256, 268 (5th Cir 1998). To the contrary, all issues raised in this case can be and have been resolved based on the pleadings.

The motion for evidentiary hearing will be denied. Dkt 18.

### 8.   Certificate of appealability

Rule 11 of the Rules Governing Section 2254 Cases requires a district court to issue or deny a certificate of appealability when entering a final order that is adverse to the petitioner. A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right." 28 USC § 2253(c)(2). This requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v McDaniel*, 529 US 473, 484 (2000). Where the court denies relief based on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," and that they "would find it debatable whether the district court was correct in its procedural ruling." Ibid.

The Court finds that reasonable jurists wouldn't find this Court's assessment of the constitutional claims debatable or wrong. As such, Crowley hasn't made the necessary showing to obtain a certificate of appealability.

A certificate of appealability will be denied.

### 9.   Conclusion

The pleadings and state court records show that the federal petition for a writ of *habeas corpus* brought by Petitioner James Dwayne Crowley lacks merit.

The motion by Respondent Bobby Lumpkin for summary judgment is GRANTED. Dkt 12.

The petition by Crowley for a writ of *habeas corpus* is DENIED. Dkt 1. Crowley's motion for evidentiary hearing is DENIED. Dkt 18.

Any other pending motions are DENIED AS MOOT.

This case is DISMISSED WITH PREJUDICE.

A certificate of appealability is DENIED.

SO ORDERED.

Signed on September 30, 2022, at Houston, Texas.

Hon. Charles Eskridge
United States District Judge